UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:04-CV-224-R

HENRY DAVID GRINTER                                          PLAINTIFF

v.

CHAD KNIGHT, et al.                                          DEFENDANTS

## MEMORANDUM OPINION

This complaint, in which a prisoner seeks redress from a government entity, is before the Court for screening, pursuant to 28 U.S.C. § 1915A.  Plaintiff, Henry David Grinter, *pro se*, seeks damages and equitable relief, under 42 U.S.C. § 1983 and § 1981, against nine, state prison officials, including the warden and the commissioner of the state department of corrections. Plaintiff's claims arise from a prison disciplinary action that, he alleges, deprived him of his right to due process and equal protection guaranteed under the Fourteenth Amendment to the Federal Constitution.  Plaintiff further alleges a prison guard used excessive force in restraining him in violation of the Eighth Amendment.  In addition to damages, Plaintiff seeks restoration of good time, expungement of the disciplinary record, and declaratory relief.  The Court will dismiss the equal protection and excessive force claims for failure to exhaust available, administrative remedies and will dismiss the remainder of the complaint for failure to state a claim on which relief may be granted.

### I.

When a prisoner commences a civil action against a government entity, officer, or employee, the district court must review the complaint, before service of process on the defendants, to identify "cognizable claims" and to dismiss any portion of the complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A;  *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997).

A complaint fails to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  The district court must liberally construe the allegations in a light most favorable to the plaintiff and accept all factual allegations as true.  *Prater v. City of Burnside*, 289 F.3d 417, 424 (6th Cir. 2002).  The plaintiff must plead more than bare legal conclusions.  *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 726 (6th Cir. 1996).  The complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988).

## II.

Plaintiff is serving a fifty-five year sentence in the Kentucky State Penitentiary.  The operative facts in this complaint occurred during Plaintiff's detention in disciplinary segregation. In short, Plaintiff broadly challenges the use of four-point restraints on him for a four-hour period and the subsequent hearing and finding of guilt on the charge of physical action against staff, who is named in this action as Defendant, Sergeant Chad Knight.

According to Plaintiff, through his cell door in the segregation unit, Defendant Knight presented Plaintiff with an incident report (a report not specified in the complaint) apparently during Defendant Knight's investigative review of the report.  Plaintiff refused to sign the report and pushed it out the food slot because, according to Plaintiff, it failed to list additional witnesses in compliance with prison regulations.  Defendant Knight closed the food slot, pushed

Plaintiff's copy under the cell door, and left the unit.

Plaintiff states that twenty-five minutes later, guards in full riot gear, including Defendant, Tim White, Lieutenant, and without the presence of a nurse, ordered Plaintiff to strip to his underwear, pinned him to the wall while they removed all linens and personal property, and placed him under four-point restraints (shackled ankles and wrists to the bed). There, Plaintiff remained for four hours. Plaintiff sustained bleeding cuts and bruises from the restraints.

The next day, according to the complaint, Plaintiff received notice that Defendant Knight claimed Plaintiff wadded up and threw the incident report, and then struck Defendant Knight's left arm (presumably with his hand, not the wad of paper). An incident report charged Plaintiff with "physical action against staff." (Compl. Ex. 1 at Part I, Investigation.)

At a hearing three weeks after the incident, the institution's adjustment committee found Plaintiff guilty "based on facts as alleged by Sgt. Knight and medical report from Nurse Roystor that [Plaintiff] did strike Sgt. Knight causing a red spot on his left wrist." (Compl. Ex. 1 at Part II, Hearing/Appeal.) Plaintiff was not provided a copy of the medical report. Plaintiff was not permitted to examine witness J. Belt, a prison employee, who gave a written statement. The adjustment committee sentenced Plaintiff to the loss of sixty days non-restorable, good time. Plaintiff unsuccessfully appealed to the warden and to the state department of corrections.

Plaintiff seeks damages, restoration of good time, expungement of his disciplinary record, and declaratory and injunctive relief, under 42 U.S.C. § 1983. Plaintiff names the following Defendants, in their individual and official capacities:

### 1.  Tim White, Lieutenant

Plaintiff essentially claims Defendant White used excessive force in applying the four-point restraints, a deprivation of his Eighth Amendment rights.  Specifically, Plaintiff alleges Defendant White's "rough actions" caused bleeding from Plaintiff's ankles and wrists "because I talked bad to his friend Sgt. Knight." (Compl. at p. 5.)  Plaintiff also alleges Defendant White deprived him of his "substantial due process rights" because he did not wait for a nurse to arrive before placing Plaintiff in the four-point restraints.

### 2.  Chad Knight, Sergeant

Plaintiff alleges Defendant Knight filed a false report, in which he accused Plaintiff of an assault, and alleges this constituted a deprivation of his right to due process under the Fourteenth Amendment.  In addition, Plaintiff asserts an equal protection claim and seeks relief under § 1981 based on the allegation that Defendant Knight was motivated by racial animus.

### 3.  Internal Affairs Officers:  Joel Dunlap, Lieutenant; Will Thomas, Lieutenant

Plaintiff contends Defendants Dunlap and Thomas contributed to Defendant Knight's actions because each failed to intervene when Plaintiff informed them in writing that Defendant Knight's accusation was false.  Although the complaint is vague on this point, it appears Plaintiff is attempting to recover under § 1983 for these Defendants' supervisory roles or for their failure to perform their "job descriptions" that include an unspecified duty to hold Defendant Knight to account for the alleged false accusation.  (Compl. at p. 5.)

### 4.  Disciplinary Committee Members: William Henderson, Lieutenant; Jay R. Jones, Lieutenant; Steve Hern, CTO

Plaintiff contends Defendants Henderson, Jones, and Hern, violated corrections policy

number 15.6 (adjustment hearing procedures) by failing to provide Plaintiff a copy of the

medical report, by failing to question Defendants Dunlap and Thomas, by failing to make a

witness, Corrections Officer J. Belt, available for questioning, and by finding guilt without

sufficient evidence.

Plaintiff further contends Defendants violated the Kentucky good-time statute, K.R.S. §

197.045. Plaintiff explains that under a fifty-five year sentence, he is eligible for 2400 good time

credits, but that "long before" the current controversy, he had already forfeited this amount.

Plaintiff contends under Kentucky law, "Defendants cannot take something that he has not yet

earned" and asks this Court to order a ten-day credit after every thirty days served. (Compl. at p.

10.) Plaintiff alleges these "negligent" actions deprived him of his "substantial" due process

rights under the Fourteenth Amendment.

### 5. Glen Haeberlin, Warden, Kentucky State Penitentiary; John D. Rees, Commissioner, Kentucky Department of Corrections

Plaintiff claims Defendants Haeberlin and Rees violated his due process rights by

affirming the adjustment committee's finding of guilt.

### III.

Congress enacted § 1983, Title 42 of the United States Code, to create a civil remedy for

individuals who have suffered injury at the hands of government officials acting in violation of

federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983, itself, creates no substantive

rights but, rather, affords legal and equitable remedies for the deprivation of rights established

elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 393-

94 (1989); *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Section 1983

states, "Every person who, under color of [law], subjects ... any [person] to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured ... ."

As a threshold matter, Plaintiff sues Defendants in their official and individual capacities. Pleading official capacity is another way of pleading suit against the entity of which the defendant is an agent, official, or employee, and the pleader may recover damages against the entity rather than the personal assets of the individual. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). All Defendants here are state officials or employees. The official-capacity claims are, therefore, claims against the Commonwealth of Kentucky. Section 1983 applies to "persons," however, and not to state governments, which enjoy immunity from citizen, damages suits under the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Hafer v. Melo*, 502 U.S. 21 (1991). Thus, no damages remedy may lie against Defendants in their official capacities.

The pivotal issue is whether Plaintiff sufficiently alleges a deprivation of a federal right, the second element in a § 1983 action. Plaintiff relies chiefly on the federal right to due process in his sweeping challenge to the disciplinary action. Plaintiff challenges both the process itself, claiming injury from the denial of certain procedural protections, and the final result, claiming the finding of guilt lacked substantial evidence. The Court will address these claims under the Due Process heading. The complaint contains additional allegations of fact in support of a § 1981, equal protection claim, specifically that Defendant Knight's accusation was motivated by racial discrimination. Finally the Court will address the Eighth Amendment claim – that Defendant White used excessive force when he placed Plaintiff in four-point restraints.

6

## A.  Due Process

Plaintiff contends prison authorities violated his federal right to due process by placing him under four-point restraints for four hours, by failing to comply with prison adjustment procedures in the disciplinary hearing, and by failing to comply with the Kentucky good-time statute.  Plaintiff specifically alleges he has a liberty interest in the prison's compliance with prison disciplinary procedures.[1]

The Fourteenth Amendment preserves the core, democratic principle that a state may deprive a person of life, liberty, or property only with due process of law.  In a prison context, obviously, an individual's liberty interests are significantly narrower than an ordinary citizen's. *Sandin v. Conner*, 515 U.S. 472, 485 (1995) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (internal quotations omitted) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974));

Before determining what process is due in any given context, the district court must first identify a liberty interest.  If a plaintiff's stake in a specific claim is less than a protected liberty interest, then no process is due and the claim lacks an essential element under § 1983, the deprivation of a federal right.  S*ee Wilkinson v. Austin*, — S.Ct. — (June 13, 2005) (stating those who seek to invoke the procedural protections of the Due Process Clause must establish that life, liberty or property is at stake).

The inquiry in this case, then, is whether Plaintiff has a liberty interest to be free from

---

[1]  The complaint and this memorandum refer to Kentucky Corrections Policies and Procedures:  15.6, Adjustment Procedures and Programs, effective Jan. 16, 2003; 15.2, Rule Violations and Penalties, effective July 17, 2003; and 14.6, Inmate Grievance Procedure, effective Nov. 17, 2000.

four-point restraints, to be found guilty in an error-free disciplinary hearing, and to be awarded good-time credits.

Liberty interests may arise under the Due Process Clause, itself, or under state law. *Austin*, — S.Ct. at * 8;  *Sandin*, 515 U.S. at 487.

None of Plaintiff's complaints implicates an interest implicit in the word "liberty" of the Due Process Clause.  The Due Process Clause, itself, does not create a liberty interest in credit for good behavior.  *Sandin*, 515 U.S. at 477 (citing *Wolff*, at 557).  "[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner."  *Id.*, at 478 (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)).  "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed."  *Id.*, at 480 (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)) (internal quotations omitted).  Not every "state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." *Id.,* at 484 (citing on *Bell v. Wolfish*, 441 U.S. 520 (1979); *Ingraham v. Wright*, 430 U.S. 651 (1977)).  "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."  *Id.*, at 485.  "We have held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Austin*, — S.Ct. at *8 (citing *Meachum*, 427 U.S. at 225). The Supreme Court has found no inherent constitutional protection in avoiding thirty days confinement in disciplinary segregation,  *Sandin*, 515 U.S. at 485, or confinement in a supermax prison, a highly restrictive form of solitary confinement where inmates are excluded from parole consideration and "deprived of almost any environmental or sensory stimuli and of almost all

human contact," *Austin*, — S.Ct. at *3, 8.

The greater question is, therefore, whether Plaintiff's complaints implicate a liberty interest created by state law.  The *Sandin* Court narrowly delineated liberty interests originating from state law to those of "real substance," by looking to the "nature of the deprivation." *Sandin,* 515 U.S. at 480.  Formerly, the Court focused on a prisoner's expectation derived from a prison regulation's mandatory or discretionary language.  *Id*., at 481-82.  The *Sandin* Court modified this approach, however, and cautioned that a federal court "ought to afford deference and flexibility to state officials trying to manage a volatile environment" rather than inject itself in the day-to-day management of prisons by finding liberty interests in regulations designed not to confer inmate rights but to guide correctional officials.  *Id*.

With this backdrop, the *Sandin* Court defined state-created liberty interests as freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id*., at 484.  The *Sandin* Court elaborated that the Constitution protects a prisoner against restraint that exceeds the sentence in an unexpected manner, such as transfer to a mental hospital or the involuntary administration of psychotropic drugs.  *Id*., at 484.

In *Sandin*, the Court held a thirty-day confinement in disciplinary segregation fell within the expected sentence.  Conversely, in *Austin*, the Court acknowledged the difficulty in applying, in a particular prison context, the *Sandin* standard because it omits an established baseline: what is typical and insignificant?  The *Austin* Court held that under any baseline, the conditions in a supermax prison impose an atypical and significant hardship.

Here, Plaintiff's punishment amounted to the forfeiture of non-restorable, sixty days of good time.  Plaintiff explains that due to previous discipline, he has forfeited all good time

9

credits he could possibly earn during his fifty-five year sentence, that is, 2400 days.  His complaint is broader, therefore, than the sixty days at issue in the present controversy.  Rather, Plaintiff asks the Court to declare that under KRS 197.045,[2] the state cannot forfeit good time that an inmate has yet to accrue.

Aside from the fact that the statute by its terms contemplates the forfeiture of future good time earnings, the question arises whether Plaintiff's interest in Kentucky's good time statute carries "real substance."  Naturally, any state law or regulation that shortens an inmate's sentence has real substance.  Here, however, the punishment appears to be more a matter of form than substance:  Plaintiff alleges he has already lost any opportunity for earlier release through previous forfeiture of good time.  This explains Plaintiff's true interest in a judicial declaration that alters the state's ability to "deny the prisoner the right to earn good time in any amount if during the term of imprisonment, a prisoner commits any offense or violates the rules of the institution" under KRS 197.045.  The Court cannot grant Plaintiff the declaration he seeks because the terms of the statute do not support it and the Federal Constitution does not otherwise require it.

Returning then to the claim for damages and injunctive relief, the question remains whether Plaintiff's loss of good time – a forfeiture that bears little or no tangible relationship to

---

[2]  KRS 197.045(1) provides:

Any person convicted and sentenced to a state penal institution may receive a credit on his sentence of not exceeding ten (10) days for each month served, except as otherwise provided in this section, to be determined by the department from the conduct of the prisoner.  In addition, the department shall provide an educational good time credit of sixty (60) days to any prisoner who successfully receives a graduate equivalency diploma or a high school diploma, a two (2) or four (4) year college degre, or a two (2) year or four (4) year certification in applied sciences, or who receives a technical education diploma as provided and defined by the department; prisoners may earn additional credit for each program completed.  *The department may forfeit any good time previously earned by the prisoner or deny the prisoner the right to earn good time in any amount if during the term of imprisonment, a prisoner commits any offense or violates the rules of the institution.*  (Emphasis added.)

10

the actual length of his sentence – carries "real substance."[3]   The Court notes the Sixth Circuit

has not squarely addressed the issue, particularly in the light of the facts presented here.

Certainly, the Court finds guidance not only in *Sandin,* but also in *Wolff* and *Meachum*, opinions

the Supreme Court characterizes as the most authoritative in analyzing prisoners' due process

rights.  *See Austin*, — S.Ct. at *9.

    In *Wolff*, the Court found the prisoner's interest had real substance because the state did

not merely create a right to good time but also recognized its deprivation was a sanction

authorized only for major misconduct or serious misbehavior.  The prisoner's interest in the

predicate finding of misconduct constrained the state's arbitrary forfeiture of good time credits.[4]

*Wolff*, 418 U.S. at 577.  In *Meachum*, the Court held the prisoner had no liberty interest in

avoiding transfer to a maximum-security institution that had "substantially more burdensome

conditions than he had been experiencing" because the transfer was, in contrast to *Wolff*, not

predicated on a serious violation or the occurrence of any events.  *Meachum*, 427 U.S. at 226-27.

---

[3]  Typically, a claim for the restoration of good time credits is not cognizable under § 1983.  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"); *Wilkinson v. Dotson*, 125 S.Ct. 1242, 1246 (2005) (stating that § 1983 action will not lie when a state prisoner challenges the fact or duration of his imprisonment and seeks the shortening of his term of confinement); *see also Edwards v. Balisok*, 520 U.S. 641 (1997) (The Court specified that the prisoner challenged the loss of "good-time credit he had previously earned toward his release" and "limited his request to damages for depriving him of good-time credits without due process, not for depriving him of good-time credits undeservedly as a substantive matter").
    This Court concludes the *Preiser* rule is not applicable here because Plaintiff's claim for injunctive relief, i.e., reduction of good time deficit, has no practical effect on the length of his sentence.  See further discussion *infra* at pages 11-12.

[4]  In Kentucky, the good-time statute itself permits the forfeiture of good time for "any offense or violation of the rules of the institution."  KRS 197.045.  Unlike the Nebraska statute at issue in *Wolff*, any rules violation, not just serious or major misconduct, is a permissible predicate to the loss of good time.  Kentucky corrections policies are narrower, however.  Under Kentucky Corrections Policy No. 15.2(G), the loss of up to sixty days, good time is a category 7 penalty, penalties 1 to 12 that range from a reprimand and warning, to a loss of up to four years, non-restorable, good time and assignment to disciplinary segregation for up to one year.  Plaintiff's charge, physical action against an employee or non-inmate, is a category VII, major violation, that carries a category 11 penalty.  The loss of up to two years, non-restorable, good time is a category 11 penalty.

The Court stated, "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all."  *Id.*, at 228.  The *Austin* Court elaborated that these cases properly address the "real concerns undergirding the liberty protected by the Due Process Clause" as the "nature of [the] conditions themselves 'in relation to the ordinary incidents of prison life.'"  *Austin*, — S.Ct. at *9 (quoting *Sandin*, at 484).

Because Plaintiff has no expectation of an earlier release given his disciplinary record, any interest he may have in retaining the right to earn sixty days good time toward reducing a good time *deficit* of more than 2400 days, as opposed to earning good time *credits*, lacks real substance.  *See Malchi v. Thaler*, 211 F.3d 953 (5th Cir. 2000) (holding that where an inmate's release date was too speculative, he had no liberty interest in his reduced opportunity to earn good-time credits).  Just as a thirty-day sentence to disciplinary segregation works no major disruption in the ordinary incidents of prison life, *Sandin*, 515 U.S. at 485, a tenuous expectation of avoiding the forfeiture of sixty days, non-restorable good time, when it has no effect on the length of sentence, in practice disrupts nothing, much less the ordinary incidents of prison life. Plaintiff reveals his true interest by seeking not merely a restoration of good time but, as discussed above, a declaration rewriting Kentucky's good time statute so that his 2400-day good time deficit is wiped clean and his sixty-day penalty acquires real substance.

If the penalty itself lacks real substance, it stands to reason the alleged errors in the adjustment committee hearing lack real substance.  In this complaint, Plaintiff alleges authorities failed to honor his request for copies of Sgt. Knight's medical report, the Plaintiff's medical

report, and the internal affairs investigation report.  Plaintiff also alleges he was denied the opportunity to confront and examine Officer J. Belt, who Plaintiff alleges testified falsely against him in a written statement.[5]

"Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation."  *Rienholtz v. Campbell*, 64 F.Supp.2d 721, 729 (W.D.Tenn. 1999) (citing *Hewitt,* 459 U.S. at 471); *Levin v. Childers*, 101 F.3d 44, 46 (6th Cir. 1996) (reiterating that "there is a fundamental logical flaw in viewing the process as a substantive end in itself") (quoting *Procopio v. Johnson*, 994 F.2d 325 (7th Cir. 1993)).  Violation of state law does not by itself constitute a deprivation of due process.  *Spruytte v. Walters*, 753 F.2d 498, 508 (6th Cir. 1985).  Thus, Plaintiff has no liberty interest in the adjustment procedures themselves.[6]

Just as the penalty and the adjustment procedures themselves implicate no state-created liberty interests, Plaintiff has no protected liberty interest to be free from four-point restraints under the facts alleged in the complaint.  Again, Plaintiff was restrained for four hours and complains a nurse was not present when he was initially restrained.  A nurse's presence is another procedural interest that in and of itself invokes no liberty interest.  Likewise,

---

[5]  The relevance of Plaintiff's medical report to the administrative charge is not clear, nor do the administrative records attached to the complaint clarify.  In his administrative appeal, Plaintiff contended the incident report failed 1) to list "c/o J. Belt" as a witness; 2) to indicate the disposition of physical evidence (wadded-up incident report); 3) to describe the planned use of force (stripping Plaintiff's cell and placing him under four point restraint); and 4) to justify in the report the denial of questioning of c/o J. Belt and internal affairs officers Dunlap and Thomas.

[6]  Even if the adjustment procedures or the penalty itself implicated a state liberty interest, the complaint contains no allegations that Plaintiff was denied process that is due under *Wolff*.  There, the Supreme Court held corrections officials must afford the inmate with written notice of the charge and an opportunity to present a defense (but no absolute right to confront witnesses) as well as written findings that support the adjustment decision.  *Wolff*, 418 U.S. at 563-67.  The adjustment hearing here, even if as Plaintiff alleges it failed to comply jot for jot with state corrections policies and procedures, nonetheless, comported with the essential requirements set out in *Wolff*.

13

immobilization in four-point restraints for four hours does not constitute an atypical and significant hardship to give rise to a liberty interest. *Laws v. Cleaver*, 140 F.Supp.2d 145, 155 (D.Conn. 2001).  Absent other allegations that Plaintiff endured especially harsh conditions for a prolonged period, confinement in four-point restraints for a brief interval does not exceed Plaintiff's sentence in an unexpected manner.  The *Sandin* standard again requires allegations of an atypical and significant hardship, not merely allegations that an inmate has endured the malevolent touch and discomfort of punitive confinement.  The mere fact that corrections officials in the day-to-day management impose penal measures that essentially confine some inmates in a prison within the prison is no basis for concluding officials have run afoul of an inmate's right to due process under the *Sandin* standard.

The Court therefore holds that neither state law nor the Due Process Clause affords Plaintiff a protected liberty interest that would entitle him to procedural protection to be free from four-point restraints, to be found guilty only in an error-free disciplinary hearing, and to be awarded good time credits.

Plaintiff challenges not only the disciplinary procedures but also the result.  The remaining criticism of the disciplinary action is that the hearing officers based their finding of guilt on insufficient evidence.  On the other side of the coin is the allegation that Defendant Knight filed a false report.  Plaintiff contends this violated his federal due process rights.

The sufficiency-of-evidence requirement in a disciplinary action stems from a reference in *Wolff* that the inmate must receive a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.  *Superintendent, Mass. Corr. Inst., Wapole v. Hill*, 472 U.S. 445, 454 (1985).  In *Hill*, the Court further specified that to comport with the minimum

14

requirements of due process, the findings of a prison disciplinary board must be supported by "some evidence" in the record.  *Id.*  This evidence standard, however, is necessary only on the assumption that the loss of good time credits implicates a protected liberty interest under the Fourteenth Amendment.  *Id.*, at 453.

Here, the "some evidence" standard does not apply because the Fourteenth Amendment is not applicable to the penalty at issue.  Again, because Plaintiff has no liberty interest in the ability to reduce a good-time deficit, the Court does not reach the question whether the process afforded comports with the Due Process Clause.  Just as important, a federal court's review, when available, of a disciplinary action does not entail a redetermination of an inmate's guilt or innocence; rather, credibility determinations remain within the province of the hearing officers.  *See Hill*, 472 U.S. at 455-57; *Wilcox v. Mudd*, 2005 WL 1322548 (E.D. Ky. 2005).

In summary, the complaint contains no allegations as a matter of law that Plaintiff was deprived of a federal right to due process, and therefore Plaintiff fails to state a claim on which relief may be granted.

**B.  Supervisory or Administrative Liability**

Because the disciplinary hearing resulted in a finding of guilt, Plaintiff believes he has a right of action against the internal affairs officers for their failure, despite Plaintiff's request, to intervene or to correct a wrong finding the first instance.  Similarly, Plaintiff faults the warden and the department commissioner for their separate failure to overturn the finding of guilt in Plaintiff's administrative appeals.  Neither claim is cognizable under § 1983.

There is no right to an administrative appeal.  *See Wolff*, 418 U.S. at 563-67; *Kelly v. Cooper*, 502 F.Supp. 1371, 1376 (E.D.Va. 1980).  Neither the warden's, nor the commissioner's,

15

nor the internal affairs officers' failure to perform their "job descriptions" constitutes a deprivation of a federal right.  Again, an inmate has no right to procedural requirements alone. *Levin v. Childers*, 101 F.3d 44, 46 (6th Cir. 1996).  "Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. ... [And] an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."  *Id.* (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)).  "In a § 1983 action, a federal court considers whether a constitutional right has been infringed, not whether a bureaucratic procedures have been violated."  *Rienholtz*, 64 F.Supp.2d at 731.

Even if the Court had found the predicate liberty interest in the disciplinary action here, there are insufficient allegations of fact to explain how the internal affairs officers could have changed the outcome, even if they had testified, short of changing the words coming out of Defendant's Knight's mouth.  Again, the internal affairs officers cannot be held derivatively responsible under § 1983 for the hearing officers' credibility determination.

Moreover, § 1983 does not impute liability to state actors solely on the basis of their supervisory role.  *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 694 (1978). It is well settled that a "person cannot be held liable pursuant to § 1983 under the doctrine of *respondeat superior* as a supervisor for the control of those who actually commit the challenged acts."  *Tedder v. Housing Authority of Paducah*, 574 F.Supp. 240, 249 (W.D.Ky. 1983) (citing *Monell,* 436 U.S. at 694).  Furthermore, a § 1983 complaint must allege that the defendant's specific conduct proximately caused the alleged constitutional injury.  *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994).

16

In short, the complaint contains no allegations that these Defendants deprived Plaintiff of a constitutional right, and therefore Plaintiff fails to state a claim on which relief may be granted.

## C.  Equal Protection under Section 1981

Plaintiff broadly alleges Defendant violated his "equal rights," but the only facts he alleges in support of this claim pertain to the reporting officer, Defendant Knight.  A plaintiff must "allege 'with particularity' all material facts to be relied upon when asserting that a government official has violated a constitutional right."  *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002).  The district court is not required to accept non-specific factual allegations and inferences.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).  The Court will therefore review whether an equal protection claim is cognizable against Defendant Knight, in his official and individual capacities.

Section 1981 provides recourse to individuals who have been deprived of equal protection of the law.  42 U.S.C. § 1981.  However, Defendant Knight is not amenable to suit under § 1981 because of his public status.  Defendant is an employee of the Department of Corrections, an agency of the Commonwealth of Kentucky, and is a state actor.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982) (stating that "state employment is generally sufficient to render the defendant a state actor").

When a state actor, as opposed to a private individual, allegedly violates a person's rights under § 1981, the plaintiff's exclusive recourse is under § 1983.  *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 736 (1989).  "We hold that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed

by § 1981 when the claim is pressed against a state actor." *Id.*; *see also Coger v. Connecticut*, 309 F.Supp.2d 274, 281 (D.Conn. 2004).

The question arises whether the *Jett* exclusivity doctrine remains good law in light of the 1991 amendment to § 1981.  Congress added subsection (c) which states, "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."  42 U.S.C. § 1981(c).  Neither the Supreme Court nor the Sixth Circuit Court of Appeals has ruled on this issue, although an unpublished opinion of the Sixth Circuit cites *Jett* as authority for dismissing a state employer under § 1981.  *See McCrary v. Ohio Dep't of Human Services*, 229 F.3d 1153, 2000 WL 1140750 (6th Cir. 2000).

Other circuits have declined to deviate from the *Jett* rule because Congress expressed no intention to overrule *Jett* or to create a remedy against state actors in addition to § 1983.  *See Burns v. Board of Com'rs of County of Jackson*, 197 F.Supp.2d 1278, 1295 (D.Kan. 2002) (citing the Fourth, Fifth, Eighth and Ninth Circuits for the holding that the 1991 amendment has no affect on the *Jett* rule and that § 1983 provides the exclusive remedy for a § 1981 violation by a state governmental unit); *see also Burbank v. Office of Atty. Gen. of Conn.*, 240 F.Supp.2d 167 (D.Conn. 2003) (citing *Felton v. Polles*, 315 F.3d 470, 480-81 (5th Cir. 2002)).  Thus, Defendant Knight, as a state actor, is not amenable to suit in his individual capacity under § 1981.

In turn, Defendant Knight in his official capacity is immune from suit.  The Eleventh Amendment to the United States Constitution generally bars individuals from suing state governments or state agencies for monetary damages in federal court.  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  The Eleventh Amendment bars a § 1981 action against a state.  *Hafford v. Seidner*, 183 F.3d 506 (6th Cir. 1999); *Freeman v. Michigan*

18

*Dep't of State,* 808 F.2d 1174, 1178-79 (6th Cir. 1987) (citing *Foulks v. Ohio Dep't of Rehab. &*
*Corr.*, 713 F.2d 1229 (6th Cir. 1983).  Thus, the Eleventh Amendment shields the Department of
Corrections, as an agency of state government, and the state itself from monetary damages under
§ 1981.

The Court will therefore dismiss the § 1981 claim for failure to state a claim on which
relief may be granted.

### D.  Excessive Force – Failure to Exhaust Administrative Remedies:

When a prisoner challenges the conditions of his confinement under federal law in a civil
action for damages, the Prison Litigation Reform Act, 42 U.S.C. § 1997e,  first requires the
prisoner to exhaust all administrative remedies available.  *Porter v. Nussle*, 534 U.S. 516, 524-25
(2002) (Congress afforded corrections officials the opportunity to address complaints internally
to improve prison administration and to facilitate judicial review by creating an administrative
record that "clarifies the contours of the controversy.")

Exhaustion of administrative remedies is mandatory: if an inmate fails to exhaust his
claim through the prison's grievance process, the court must dismiss the complaint without
prejudice, even if the inmate believes exhaustion would be futile.  *Booth v. Churner,* 532 U.S.
731, 741 (2001); *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002).  Further, "a prisoner must
plead his claims with specificity and show that they have been exhausted by attaching a copy of
the applicable administrative dispositions to the complaint or, in the absence of written
documentation, describ[ing] with specificity the administrative proceeding and its outcome."
*Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *see also Bey v. Johnson*, 407 F.3d 801
(6th Cir. 2005).

A grievance statement satisfies the exhaustion requirement if it "gave the prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Burton*, 321 F.3d at 575; *Thomas v. Woolum*, 337 F.3d 720 (6th Cir. 2003).

Plaintiff states he has not availed himself of the penitentiary's grievance process on any of the facts alleged in the complaint because adjustment committee decisions are non-grievable under corrections policy number 14.6.  The facts alleged in the complaint, however, appear to exceed the scope of the adjustment committee decision.  Plaintiff contends Defendant White used excessive force in placing Plaintiff in four-point restraints, in violation of his right to be free from cruel and unusual punishment – an Eighth Amendment claim under § 1983.  Plaintiff also contends Defendant Knight discriminated against him on the basis of his race – and equal protection claim under § 1983.  Without a grievance statement containing these allegations, officials at the penitentiary lack fair notice of the alleged misconduct and miss any opportunity to address it internally.

Accordingly, the Court will dismiss these claims by separate order for Plaintiff's failure to allege exhaustion of his administrative remedies.

## IV.

In summary, the Court will dismiss all claims against Defendants Rees, Haeberlin, Hern, Jones, Henderson, Thomas, Dunlap; and the due process claims against Defendant Knight and Defendant White; for failure to state a claim on which relief may be granted.  The Court will further dismiss the equal protection, § 1983 claim against Defendant Knight and the excessive force, § 1983 claim against Defendant White for Plaintiff's failure to exhaust his administrative

20

remedies.

The Court will enter an order consistent with this Memorandum Opinion.

Dated:

cc:      Plaintiff, *pro se*

4413.007